

# THE ATTORNEY GENERAL
# OF TEXAS

February 03, 1988

JIM MATTOX
ATTORNEY GENERAL

Mr. Doyce R. Lee
Commissioner
State Board of Insurance
1100 San Jacinto Blvd.
Austin, Texas    78701

Opinion No.   JM-850

Re:  Whether a  casualty  or
surety company authorized to
write fire and  allied lines
of insurance  is subject  to
statutory    risk    exposure
limitations,   and   related
questions  (RQ-1100)

Dear Mr. Lee:

You have asked three questions regarding the scope of
article 6.16 of the Texas Insurance Code  as most recently
amended in 1983.   Your questions are:

> 1.  Is a  casualty  or  surety  insurance
> company authorized to write fire and  allied
> lines of insurance subject to the ten  (10%)
> percent limitation  of article  6.16 of  the
> Insurance Code  regardless  of  whether  the
> company actually writes such lines?

> 2.  Is a company authorized to write fire
> and allied lines required  to adhere to  the
> limitation imposed  by article  6.16 of  the
> Insurance  Code  regarding   all  lines   of
> insurance it writes?

> 3.  Is the limitation imposed by  article
> 6.16 of the  Insurance Code applicable  only
> to the writing of  fire and allied lines  of
> insurance?

Article 6.16 reads, in pertinent part:

> 1.  No  insurance  company   incorporated
> under the laws  of the United  States or  of
> any  State  thereof <u>and  authorized  to  do
> business in  this State  in the  writing  of
> fire and allied lines of insurance</u> as  those

p.  4114

terms may be defined by statute, by ruling of the State Board of Insurance, hereinafter called the 'Board,'or by lawful custom, shall expose itself <u>to any loss or hazard on any one (1) risk</u>, except when insuring cotton in bales, and grain, <u>to an amount exceeding ten (10%) per cent of its paid-up capital stock and surplus</u>, unless the excess shall be reinsured by such company in another solvent insurer. (Emphasis added.)

By its plain language, the statute reaches every insurance company "<u>authorized</u> to do business in this State in the writing of fire and allied lines of insurance." There is no room for construction when a law is expressed in plain and unambiguous language and its meaning is clear and obvious; such laws will be applied and enforced as they read. <u>Glens Falls Insurance Co. v. Hawkins</u>, 126 S.W. 1114 (Tex. 1910).

The obvious purpose of restricting the exposure a company may undertake on a particular risk is to protect the soundness and solvency of firms with which the citizens of this state may contract for fire insurance or allied lines of insurance. The restriction promotes the "spreading" of an insurance company's risk by limiting its ability to dangerously concentrate its financial exposure, thus reducing the likelihood that a single loss will seriously affect the company's ability to honor its obligations. <u>Cf. Glens Falls Insurance Co. v. Hawkins, supra</u>.

From the standpoint of the persons to whom those obligations are owed, it is as important to avoid becoming insured by an insurer <u>already</u> dangerously exposed as it is to prevent a sound insurer with which one has contracted from becoming unsafe as a result of such exposure. Inasmuch as any insurer authorized to write fire and allied lines coverage may do so in the future even if it does not do so now, we advise, in answer to your first question, that a casualty or surety company authorized to write fire and allied lines of insurance is subject to the single risk limitation imposed by article 6.16 whether or not the company has actually written such lines.

We are also of the opinion, in answer to your second question, that such a company is subject to the article 6.16 limitation regarding single risk exposure in regard to all the lines of insurance it writes.

The statute is designed to ensure that companies authorized to write fire and allied lines of insurance will avoid becoming unsound or insolvent by gambling too heavily on a single risk. A company, authorized to write fire or allied lines coverage, that exposes itself on a single insurance risk to a loss greater than 10% of its capital stock and surplus puts itself in no less a dangerous condition because the risk involves a non-fire or non-allied lines hazard. It is not only fire risks or risks in allied lines that can jeopardize the solvency of an insurance company. It is the concentration of insurance risk that the statute guards against, regardless of the nature or source of the risk.

In an earlier day when the predecessor of article 6.16 (article 4932, V.T.C.S.) read: "No fire, fire and marine, marine or inland insurance company doing business in this State shall expose itself to any one risk . . . to an amount exceeding ten percent of its paid up capital stock," Assistant Attorney General W.W. Heath wrote a letter opinion dated October 29, 1936, addressed to R.L. Daniel, Chairman of the Board of Insurance Commissioners. It concluded that although a casualty company authorized to write fire coverages as well as liability coverages was subject to the 10% single risk exposure limitation insofar as its fire, fire and marine, marine or inland marine insurance business was concerned, it was not subject thereto with respect to its public casualty business. The 1936 opinion reached that conclusion, it said, because "there seems to be no such statute in the casualty insurance laws of this state."

We think the 1936 opinion failed to properly analyze the purpose and intent of the legislation, but it is unnecessary to overrule it. The change in the language of the current law from "doing business in this State" to "authorized to do business in this State" (designating those companies subject to its strictures) is sufficient in itself to require a different construction today. See Acts 1875, 14th Leg., 2d C.S., ch. 31, §8, at 34; Attorney General Opinion O-4838 (1942).

In view of our answers to your first two questions, your third question is moot.

## S U M M A R Y

A casualty or surety company authorized to write fire and allied lines of insurance

is subject to the "ten percent" single risk limitation imposed by article 6.16 of the Insurance Code (whether the company has actually written fire and allied lines or not) regarding all the lines it writes.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General