Affirmed and Memorandum Opinion filed July 17, 2003









Affirmed
and Memorandum Opinion filed July 17, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-03-00051-CV

____________

 

SEALIFT, INC., Appellant

 

V.

 

THOMAS SATTERLY, D.O., Appellee

 



 

On
Appeal from the 56th District Court

Galveston County, Texas

Trial
Court Cause No. 01CV0724

 



 

M
E M O R A N D U M   O P I N I O N

In
this interlocutory appeal, Sealift challenges the trial court=s
order granting Dr. Thomas Satterly=s
special appearance.  Because we find that
Satterly=s contacts with the State of Texas were insufficient to
establish specific jurisdiction, we affirm the judgment of the trial court. 

Background








Satterly, a
Missouri physician, treated Calvin D. Fairbanks, the plaintiff in the
underlying suit and also a Missouri resident, for an injury Fairbanks allegedly
sustained while working on a ship owned by Sealift.  Upon returning to Missouri, Fairbanks sought
orthopedic care from Satterly.  Satterly performed
several procedures on Fairbanks, including a total knee replacement.

Fairbanks
brought a personal injury suit against Sealift. 
In conjunction with this suit, Fairbanks= attorneys, Melancon, Hogue & Buzbee, L.L.P. (hereinafter Athe firm@), sent a letter of protection to Satterly
stating the following:

On
behalf of Calvin Fairbanks, the firm agrees that your facility is to be paid
for services provided to our client, if the following conditions are met:

1.  The charges are reasonable;

2.  Your facility provides this office with
copies of the reports and itemized statements for the services and charges,
preferably after each visit or on a regular basis;

3.  I [Anthony Buzbee]
am the attorney in charge at the time the case is settled or at the time a
judgment is collected;

4.  There is enough money from a settlement or
judgment to cover the charges incurred after all attorney fees have been paid
and expenses reimbursed to this office; and

5.  The patient/client
acknowledges his liability for the payment in full of any and all charges
incurred by your facility and in no event is this firm and/or Richard L. Melancon and/or Michael W. Hogue and/or Anthony Buzbee personally liable.                       

Satterly
subsequently sent Fairbanks= bills to Fairbanks= insurance carrier in Florida, naming the firm as an additional
insurer on a claim form.  The record is
unclear as to whether Satterly ever responded to the
letter or otherwise directly communicated with the firm.[1]








Sealift
filed a third-party action against Satterly seeking
contribution.  Sealift claimed Satterly provided unnecessary medical treatment resulting
in increased fees and potential financial harm. 
Sealift points to the letter of protection as constituting a contract
with Fairbanks= counsel in Texas such that it should provide the court with
specific jurisdiction over Satterly.  For the reasons discussed below, we find the
letter of protection was insufficient to establish jurisdiction in Texas.

Standard
of Review

The
plaintiff bears the initial burden of pleading sufficient allegations to bring
a nonresident defendant within the provisions of the long-arm statute.  BMC Software Belg.,
N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex.
2002).  A defendant challenging a Texas
court=s
personal jurisdiction over it must negate all jurisdictional bases.  Id.

Whether
a court has personal jurisdiction over a defendant is a question of law, which
we review de novo.  Id. at
794.  However, the trial court frequently
must resolve questions of fact before deciding the jurisdiction question.  Id. 
When, as here, the trial court does not issue findings of fact and
conclusions of law with its special appearance ruling, all facts necessary to
support the judgment and supported by the evidence are implied.  Id. at 795.  When the appellate record includes both the
reporter=s
and clerk=s records, however, these implied findings are not conclusive
and may be challenged for legal and factual sufficiency.  Id.

Personal
Jurisdiction








The
Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a
nonresident defendant that does business in Texas.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 17.041-.045 (Vernon 1997 & Supp. 2002).  The broad language of the Adoing
business@
requirement in section 17.042 permits the statute to reach as far as the
federal constitutional requirements of due process will allow.  Guardian Royal Exch. Assur.,
Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991).  Thus, we rely on precedent from the United
States Supreme Court and other federal courts, as well as Texas decisions, to
determine whether the assertion of personal jurisdiction is consistent with the
requirements of due process.  BMC
Software, 83 S.W.3d at 795.

Personal
jurisdiction over a nonresident defendant is constitutional when two conditions
are met: (1) the defendant has established minimum contacts with the forum
state, and (2) the exercise of jurisdiction comports with traditional notions
of fair play and substantial justice.  Id.  A nonresident defendant that has Apurposefully
availed@
itself of the privileges and benefits of conducting business in the forum state
has sufficient contacts to confer personal jurisdiction.  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985)).  A defendant should not be subject to
jurisdiction based on random, fortuitous, or attenuated contacts.  Id. (citing Burger King, 471
U.S. at 475).  Furthermore, the
nonresident=s contacts must result from its own purposeful activity and not
the unilateral activity of the plaintiff or a third party.  See Guardian Royal, 815 S.W.2d at 227.

The
defendant=s contacts can give rise to either specific or general
jurisdiction.   Specific jurisdiction
exists when the plaintiff=s claims arise out of or relate to the nonresident defendant=s
contacts with Texas.  Guardian Royal,
815 S.W.2d at 230.  These contacts, in
turn, must arise from action or conduct by the defendant that was purposefully
directed toward Texas.  Id.  

At
the special appearance hearing, appellants argued specific jurisdiction was
established when Satterly entered into a contract
with a Texas party, all of which allegedly was to have been performed in
Texas.  Appellant also argued Satterly inserted himself into Texas litigation by taking a
financial interest in the outcome of the underlying lawsuit.  In response, Satterly=s
affidavit states he has never practiced medicine in Texas, attended school
here, owned any property, been the subject of a lawsuit, advertised, or
actively sought business in Texas.








Appellant
points to no case law, and we can find none in any jurisdiction, to support the
proposition that jurisdiction may extend to an individual receiving an
unsolicited letter of protection.[2]  The letter of protection does not constitute
a contract and, even if it were a contract, the letter does not provide the
minimum contacts required to extend jurisdiction over Satterly.


First,
there are a multitude of reasons why this letter of protection does not
constitute a contract.[3]  Foremost is the fact that Satterly
never accepted an offer by Fairbanks= lawyers.  Sealift=s
lawyers acknowledged in the trial court that Satterly
did not solicit the letter.  Further, no
evidence exists showing he responded to the correspondence in any way.  The only action Sealift points to is Satterly=s listing of Fairbanks= law firm as an additional insurer of medical bills on claim
forms filed with his insurance company. 
This does not constitute acceptance. 


Sealift
also contends that Satterly accepted the firm=s
letter by performing more surgeries on Fairbanks.  We find this argument to be without merit, as
the letter of protection never requested further medical treatment as a
condition of receiving payment for services already performed.  Rather, Satterly
continued a course of treatment begun prior to this suit.  Therefore, no contract existed between the
parties.








Furthermore,
even if a contract had been formed, it did not constitute doing business in
Texas for purposes of the long-arm statute.  Tex. Civ. Prac. & Rem. Code Ann. '
17.042 (Vernon 1997).  Texas courts have
long held that personal jurisdiction is not justified by the single fact that a
nonresident contracts with a Texas resident. 
Budgget Indus., Inc. v. Faber Eng=g,
L.L.C., 14-02-01076-CV, 2003 WL
21087138, at *4 (Tex.
App.CHouston [14th Dist.] May 15, 2003, no pet.) (memorandum opinion); J.D. Fields
& Co., Inc. v. W.H. Streit, Inc., 21 S.W.3d
599, 604 (Tex. App.CHouston [1st Dist.] 2000, no pet.).  Here,
the purported contract does not establish minimum contacts as Satterly neither did business in the State nor purposefully
availed himself of the privilege of conducting activities within it by
contracting with a Texas resident.

Sealift
contends the letter of protection creates a contract between a Texas law firm
and Satterly, a Missouri resident.  The correspondence, however, was written on
behalf of Fairbanks and expressly disavows any liability on the part of the
firm.  At the most, the letter would
constitute an agreement between two Missouri residentsCFairbanks
and Satterly. 
An agreement between two out-of-state residents does not constitute
doing business within Texas. 

In
order for an action to form the basis of jurisdiction, the contact between the
nonresident defendant and the forum state must have occurred as a result of the
nonresident defendant=s purposeful conduct and not the unilateral activity of the
plaintiff or others.  Guardian Royal,
815 S.W.2d at 227.  

The nonresident defendant=s activities must have been Apurposefully directed@ to the forum and the litigation must result from alleged
injuries that Aarise out of or relate to@ those activities.  When
specific jurisdiction is asserted, the minimum contacts analysis focuses on the
relationship among the defendant, the forum and the litigation.        

Id. at 228 (citations omitted). 
Satterly directed no activities toward
Texas.  He performed medical services on
a Missouri resident in Missouri and sent medical bills to the patient=s
insurance carrier in Florida.  The only
contact Satterly has had with this State is receiving
the unsolicited letter of protection from a patient=s
Texas law firm.  If this were sufficient
to constitute the grounds for jurisdiction, it would open a floodgate of
litigation, pulling in out-of-state defendants based on no more than the
receipt of a letter.  We decline to make
this finding and overrule appellant=s sole point of error. 
The trial court=s judgment is affirmed.

 

/s/        Leslie
Brock Yates

Justice

Judgment rendered and Memorandum Opinion
filed July 17, 2003.

Panel consists of Justices Yates, Hudson,
and Frost.











[1]  Sealift points
to special appearance exhibits to show that Satterly
sent documents directly to the law firm. 
However, these exhibits do not show whether  Satterly sent any
bills directly to the firm or merely named the firm as an additional insurer on
health claim forms sent to AMO Medical Plan in Dania, Florida.  The records provided to AMO by the firm
include documents from Phelps County Regional Medical Center in Missouri, but
nothing specifically indicates they were provided by Satterly.  Regardless of whether Satterly
directly provided documents to the firm, it would not affect our analysis.





[2]  ALetters
of protection@ are sometimes
used by attorneys in personal injury litigation to guarantee payment to
healthcare providers from the proceeds of any future recovery. See, e.g.,
Brown v. Comm=n
for Lawyer Discipline, 980 S.W.2d 675, 678 (Tex. App.CSan
Antonio 1998, no pet.); Belt v. Comm=n
for Lawyer Discipline, 970 S.W.2d 571, 573 (Tex. App.CDallas
1997, no pet.).





[3]  The elements
of a contract are: (1) an offer; (2) acceptance in strict compliance with terms
of the offer; (3) a meeting of the minds; (4) a communication that each party
has consented to the terms of the agreement; (5) execution and delivery of the
contract with an intent that it become mutual and binding on both parties; and
(6) consideration.  Angelou v. African
Overseas Union, 33 S.W.3d 269, 278 (Tex. App.CHouston
[14th Dist.] 2000, no pet.).